## CRANER v STATE

Ohio Appeals, 2nd Dist, Montgomery Co

No 1293.   Decided Feb 5, 1936

John Egan, Dayton, for plaintiff in error.
Baggott & Baggott, Dayton, for defendant in error.

## OPINION

By THE COURT

The plaintiff in error was the defendant below and was charged with the offense of failing to provide care, support, maintenance and education for his daughter, Sarah Craner, age 16 years. Trial was had, defendant convicted, new trial filed, overruled and defendant sentenced. Error is prosecuted to this court. By agreement of counsel consideration of this case has been postponed until this term of court. The brief of defendant sets up three claims of error.

(1) That there is no showing that the child of the defendant, Sarah Craner was the legitimate daughter of the defendant.

(2) That there is no showing of the defendant's ability to support his child, and

(3) No showing of income or earnings by the defendant during the period within which he was accused of failing to support his child.

It is our judgment that no prejudicial error intervened against the defendant in any of the particulars asserted. It appears that the period during which the father is charged with failing to support his child was subsequent to the time when she became 16 years of age, therefore, it was necessary that the proof disclose that the child of the defendant was legitimate. This requires consideration of §10503-15 GC which provides:

"When by a woman, a man has one or more children and afterwards intermarries with her, such issue, if acknowledged by him as his child or children, will be legitimate." * * *

It is urged that the record discloses no acknowledgment by the defendant that Sarah Craner was his child.

The record is meager. It appears that the child was born a short time (29 days) after the marriage of the defendant to the mother, who at the time of the trial was Blanche Quintel. It further appears that the mother had preferred a bastardy charge against the defendant upon which there had been no trial. After the marriage the parties did not go to housekeeping, but lived together as husband and wife with his wife's mother. The child was named and known as Sarah Quintel Craner, carrying the sur-name of her father. The parties lived together a little more than a year, during which time he supported his wife and his daughter. A short time after the separation a divorce decree was granted to the wife upon the aggression of the husband in which decree it was found that Sarah Quintel Craner was the child of the parties. Her exclusive custody was granted to the mother. She was awarded $200.00 alimony and the defendant required to pay the sum of $3.00 weekly to "their said child Sarah Quintel Craner."

It appears from the testimony that $10.00 of the $12.00 per month required to be paid by the father to the daughter was paid through the Clerk of Courts of Darke County, Ohio until the daughter of the parties became 16 years of age. It further appears that later there was an indictment returned by a grand jury of Darke County against the defendant for failing to provide for his legitimate child, Sarah Craner, but defendant was never brought to trial on this charge and a nolle pros was finally entered.

During the progress of the trial the following statements were made by Mr. Baggott, counsel for the State:

"By agreement of the parties, it is understood that the defendant has not paid any sums of money for the support of Sarah Craner, daughter of the defendant, since the first of September 1933."

And by Mr. Baggott:
"It is stipulated by the parties that the defendant has had earnings since September 1, 1933 up to and including the second of April, that he had the ability to pay."

Defendant was represented at the trial of the cause by counsel and though it does not affirmatively appear that he joined in the stipulations there was no repudiation made by his counsel and it must therefore be assumed that they were authorized stipulations.

The mother of Sarah Craner testified that since September 1, 1933, the daughter, who was in high school helped to support herself and her other support was taken care of by the mother and by her second husband. The defendant did not take the stand in his own behalf and now urges that the State has failed to make the requisite degree of proof against him.

We are of opinion that the marriage of the mother of the child by the defendant at a time when he must have known she was enciente, the living with her and the child as husband and father and providing for their maintenance and support for about a year. the finding of the trial court that Sarah Craner was the child of the parties in the divorce decree undenied and uncontradicted made proof of acknowledgement by the defendant that Sarah Craner was his child and therefore legitimate.

In Miller v Anderson, 43 Oh St, 479 Judge Atherton speaking for the court said:

"By the act of Riddlemoser in marrying the complainant he most solemnly and effectively acknowledged the unborn child to be his own He knew her (the mother's) condition, and every honorable sentiment would require him to marry her if the child was his and to avoid her if it was not. He chose to marry her and thus legitimate her issue and make it his own."

It must be noted that there was no determination of the bastardy suit and insofar as the record discloses the defendant was under no compulsion when he married the mother of his child. Nor, if there had been an adjudication that he was the putative father in the bastardy proceeding would he have been under legal obligation to marry the complainant. When, then, he did marry the mother of the child after it was born and conduct himself as we have heretofore recited, there certainly arises a very strong presumption not only that he was the father of the child, but that he so acknowledged it. In LaRoche v LaRoche, 10 Oh Ap, 243, a child born out of wedlock was found to be the legitimate child of a testator largely upon proof of subsequent marriage to the mother and upon a devise in the will of the father in which he merely referred to his child as one of his "children" and as one of his "sons."

The second and third claimed errors are met by the stipulations heretofore quoted, which establish the material elements of proof, viz., that the defendant had paid

nothing to his child for her support, maintenance, etc., during the time fixed in the charge against him and that he was able to do so by reason of personal earnings. But it is claimed by defendant that the stipulations may not be used against him because to do so would compel him, against his will, to testify.

The fourth syllabus of **State ex Warner v Baer et, 103 Oh St, 585,** settles this question:

"Agreement, waivers and stipulations made by persons accused of crimes, or by their counsel in their presence, during the course of a trial for crime, are, after the termination of the trial, as binding and enforceable upon such persons as like agreements, waivers and stipulations are upon parties to civil actions."

It was the primary obligation of the defendant to support his minor child. The fact that she was securing necessities by her own efforts, the assistance of her mother and her stepfather, would in no wise relieve the defendant of his obligation under the law. It reasonably appears that but for the assistance of the child's mother and her stepfather, she would have been without the support which it was the obligation of the father to provide. It is no defense that necessities are supplied by the mother out of her own means or by the child's own exertion and labor or from the child's own means. 46 C. J. 1354.

The judgment will be affirmed.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.

## ON APPLICATION FOR REHEARING

Decided March 14, 1936

By THE COURT

Submitted on application of plaintiff in error for rehearing which was filed long after rule day.

The application is predicated upon a statement of this court to the effect that the child of Benjamin Craner was born a short time after the marriage of Benjamin Craner and Blanche Craner, and therefore the court proceeded upon a faulty premise. This statement, found in our opinion, was an inadvertence and the cause was determined upon a true understanding of the fact that the marriage did not occur until after the birth of the child.

Careful consideration of our decision will disclose that the element touching the proof of the legitimacy of the child, which we considered and analyzed, related to the acknowledgment of the child by the father after the marriage to the mother, under the statute, §10503-15 GC. If the marriage had taken place before the child was born there would arise an almost irrebuttable presumption of the legitimacy of the child. It is only because of the fact that the marriage occurred after the birth of the child that any substantial question was presented for consideration and the statute had any application.

The cases cited and discussed were only inferentially helpful to the decision.

We undertook, in our former opinion, to consider with care the question presented and nothing appears in the application for rehearing which would require a different conclusion.

The application will, therefore, be overruled.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.